# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-KA-00081-SCT

*GREGORY BOONE*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/08/2005 |
| TRIAL JUDGE: | HON. TOMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOHN R. McNEAL, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JOHN R. HENRY |
| DISTRICT ATTORNEY: | ELEANOR JOHNSON PETERSON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 01/24/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., CARLSON AND RANDOLPH, JJ.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. Gregory Boone, a/k/a Cameo Barnes, ("Boone"), was indicted by a grand jury in the Circuit Court of the First Judicial District of Hinds County for gratification of lust with a child under the age of sixteen in violation of Miss. Code Ann. Sect. 97-5-23 (Rev. 2006). After trial on November 7-8, 2005, Boone was found guilty by a jury. Boone was sentenced to fifteen years, with ten suspended and five to serve, and two years probation.

¶2.	Subsequent to the jury verdict and sentencing, Boone filed a Motion for Judgment Notwithstanding the Verdict, or in the Alternative, a New Trial, which the trial court denied. Boone timely filed this appeal and presents the following issues to the Court:

I.	Whether the court erred as a matter of law in denying Boone's Motion for Continuance based on the substitution of counsel.
II.	Whether the court erred in failing to grant Boone's Motion for Directed Verdict.
III.	Whether the court erred in failing to grant Boone's Motion for Judgment Notwithstanding the Verdict or in the Alternative a New Trial.
IV.	Whether the verdict of the jury was against the overwhelming weight of the evidence.

## FACTS

¶3.	On the weekend of March 13th and 14th, 2004, AB, who was eleven years of age at the time, was at home, along with her sister, BB, age ten.[1] The two girls were watched by a baby-sitter, as their mother did not get off work until 11:15 p.m. on March 13, 2004. When their mother arrived home around 11:30 p.m., AB and BB were in their brother's bedroom,[2] because it had a television, which was left on while the girls went to sleep.

¶4.	Their mother testified she received a call from Boone that evening asking if he could spend the night at her home. She told Boone he could spend the night because he had no place to go, as his home had recently burned. Boone spent the night at the house "from time to time" as he and the girls' mother were "intimate friends." Soon after the call, Boone arrived at her home. They talked for a few minutes, and Boone made sexual advances

---

[1]Alias initials are used as the victim and her sister were minors at the time of the crime and at the time of trial.

[2]He was not at home this weekend.

2

toward her, which she rebuffed. Boone continued to make advances. She then fell asleep on the couch in the living room.

¶5.    AB testified she and BB were in the bed with the television on. AB said she was awakened in the middle of the night because someone was rubbing her breasts and buttocks and was rubbing his penis against her legs, with his legs wrapped around her. AB testified she did not see the person who was rubbing and touching her.

¶6.    After this person left the room, AB went into the living room where her mother was sleeping on the couch. She woke her mother and told her what happened. Her mother testified AB was "shaking like a leaf on a tree," saying, "somebody is in my room. . .I'm scared. Somebody is in my room. They're touching me. . . ." Her mother then turned on the lights and searched the bedroom, including the closet. She also verified that the bedroom window was locked. No intruder was found. She then went to her own bedroom and, seeing Boone asleep in her bed, then climbed into bed. She testified nothing "went on between" her and Boone that night. Boone was wrapped in a comforter. When she awoke the next morning, she discovered Boone was naked.

¶7.    AB testified after her mother searched the bedroom that night, she went back in the bedroom and roused BB. AB relayed to her sister that someone had been in the room touching her. BB testified AB was acting "scared and terrified" and "was shaking" when she informed BB of what happened. AB testified that she then turned on the light and the sisters stayed up the entire night.

¶8.    BB testified that she awoke during the night and saw Boone in the bedroom, but that she was not scared of him because she had known him for two or three years and "because

3

that's my mama's friend and I didn't think he was going to do anything." BB stated she saw him when she "turned over and opened her eyes" and because "he walked across the TV. I could see because the light on the TV showed." BB confirmed it was Boone, because "I could see him because his ears and his head shape" and his "ears are pointed at the top."

¶9. Their mother testified that the next morning, the family was getting dressed for church and she asked the girls to again relay what happened the previous night. The girls told her again what happened, but they would not tell her who had touched AB, as Boone was still present in the family's home. Their mother stated BB continued to say, "I know what I saw in the TV." She confronted Boone and told him she knew her children would not lie to her, and that she "knew something happened." Since he was the only male in the house, she said to Boone, "I know you did something." She told Boone she was going to call the police. Boone maintained he did not touch AB.

¶10. After their mother told Boone she would call the police, he began to gather his things to leave, but Boone could not find his driver's license. Their mother stated she found Boone's license "a day or two later" on her bedroom floor and turned it in to the Jackson Police Department.

¶11. An officer from the Jackson Police Department took an initial statement from the mother regarding the incident. The officer testified after he met with the mother, he turned the case over to the sex crimes unit.

¶12. Boone called one witness in his defense, Lonnie McGill ("McGill"), a rap artist. McGill testified Boone wanted to get into the music business and that they were recording the weekend of March 13th and 14th, 2004. McGill testified he and Boone were in the

4

recording studio from Saturday afternoon until 3:00 or 4:00 in the morning on Sunday. McGill testified Boone drove them both to McGill's house where they spent the night. McGill testified Boone slept on his couch and they woke up Sunday morning and went back to the recording studio. McGill testified Boone was in his presence from Saturday afternoon until Sunday.

## ANALYSIS

**I.     Whether the trial court erred as a matter of law in denying Boone's Motion for Continuance based on the substitution of counsel.**

¶13.    "The decision to grant or deny a motion for a continuance is within the sound discretion of the trial court and will not be reversed unless the decision results in manifest injustice." ***Ross v. State***, 954 So. 2d 968, 1007 (Miss. 2007) (citation omitted).

¶14.    Boone was initially represented by a Hinds County assistant public defender in this matter, but he subsequently hired an attorney. Boone submits the trial court erred by denying his Motion for Continuance as he obtained this new counsel a few weeks prior to trial. The record contains an Agreed Order Allowing Counsel to Withdraw and Substituting Counsel for the Defendant filed one month prior to trial.

¶15.    However, after thorough review of the clerk's papers and transcript, this Court did not find a motion for continuance, written or oral, made by Boone and further did not find the denial of same. At the start of trial, the *State* asked to have one extra day to review witness testimony, but was denied. When asked if the Defense was prepared to go forward, counsel for Boone responded, "yes."

5

¶16. "We have on many occasions held that we must decide each case by the facts shown in the record, not assertions in the brief, however sincere counsel may be in those assertions. Facts asserted to exist must and ought to be definitely proved and placed before us by a record, certified by law; otherwise, we cannot know them." ***Barnwell v. State***, 1997 Miss. LEXIS 495, *7-8 (Miss. October 9, 1997).

¶17. There is no evidence in the record of a motion for continuance. Therefore, this issue has no merit.

**II. Whether the court erred in failing to grant Boone's Motion for Directed Verdict.**
**III. Whether the court erred in failing to grant Boone's Motion for Judgment Notwithstanding the Verdict or in the Alternative a New Trial.**

¶18. The aforementioned issues presented by Boone have been combined, as their standards of review are overlapping.

> A motion for a directed verdict and a motion for a judgment notwithstanding the verdict challenge the sufficiency of the evidence. ***Bush v. State***, 895 So. 2d 836, 843 (Miss. 2005). When reviewing a case for sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ***Id***. (quoting ***Jackson v. Virginia***, 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). The evidence must show "beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction." ***Id***. (quoting ***Carr v. State***, 208 So. 2d 886, 889 (Miss. 1968)). If, keeping in mind the reasonable-doubt standard, "reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense," the evidence will be deemed to have been sufficient. ***Id.*** (quoting ***Edwards v. State***, 469 So. 2d 68, 70 (Miss. 1985)).
>
> A motion for a new trial, on the other hand, challenges the weight of the evidence. ***Id.*** at 844. We will disturb a jury verdict only when "it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." ***Id***. (citing ***Herring v. State***, 691 So. 2d

6

948, 957 (Miss. 1997)). This Court acts as a "thirteenth juror" and views the evidence in the light most favorable to the verdict. . . . *Id*. (citing *Herring*, 691 So. 2d at 957).

*Brown v. State*, 2007 Miss. LEXIS 576, *5-7 (Miss. October 18, 2007).

¶19.    Boone asserts the trial court erred in denying his Motion for Directed Verdict made at the close of the State's case-in-chief, and that it further erred in denying his Motion for Directed Verdict, and his Motion for Judgment Notwithstanding the Verdict or in the Alternative, Motion for new Trial. Boone claims the evidence was confusing and contradictory, and that the State failed to make a prima facie case for gratification of lust.[3] However, Boone provides no argument as to how the evidence failed to be sufficient to prove the offense of gratification of lust. In his brief, Boone only states, "the evidence, at best, was confusing and contradictory and in no way rose to the level of reasonable doubt."

¶20.    While Boone did in fact present an alibi witness, review of the testimony by this witness and the witnesses provided by the State does not show that the evidence "so considered [was] such that reasonable and fair-minded jurors could only find the accused not guilty." *Bell v. State*, 963 So. 2d 1124, 1129 (Miss. 2007). Further, the evidence presented

---

[3] Miss. Code Ann. Sect. 97-5-23(1) (Rev. 2006) states: (1) Any person above the age of eighteen (18) years, who, for the purpose of gratifying his or her lust, or indulging his or her depraved licentious sexual desires, shall handle, touch or rub with hands or any part of his or her body or any member thereof, any child under the age of sixteen (16) years, with or without the child's consent, or a mentally defective, mentally incapacitated or physically helpless person as defined in Section 97-3-97, shall be guilty of a felony and, upon conviction thereof, shall be fined in a sum not less than One Thousand Dollars ($1,000.00) nor more than Five Thousand Dollars ($ 5,000.00), or be committed to the custody of the State Department of Corrections not less than two (2) years nor more than fifteen (15) years, or be punished by both such fine and imprisonment, at the discretion of the court.

by the State was such that "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." **Bush,** 895 So. 2d at 843. Therefore, the trial court did not err in denying Boone's Motion for Directed Verdict or his Motion for Judgment Notwithstanding the Verdict, or in the Alternative Motion for New Trial.

**IV.     Whether the verdict of the jury was against the overwhelming weight of the evidence.**

> In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Only when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal.

**Herring v. State**, 691 So. 2d 948, 957 (Miss. 1997) (internal citations omitted).

¶21.     As stated *supra*, Boone presented McGill as an alibi witness in order to show he was not present in AB's home when the incident occurred. However, the State presented conflicting testimony from AB, BB and their mother.

¶22.     The jury was presented with testimony from both sides and rendered its decision accordingly.

> Jurors are permitted, indeed have the duty, to resolve the conflicts in the testimony they hear. They may believe or disbelieve, accept or reject, the utterances of any witness. No formula dictates the manner in which jurors resolve conflicting testimony into findings of fact sufficient to support their verdict. That resolution results from the jurors hearing and observing the witnesses as they testify, augmented by the composite reasoning of twelve individuals sworn to return a true verdict. A reviewing court cannot and need not determine with exactitude which witness or what testimony the jury believed or disbelieved in arriving at its verdict. It is enough that the conflicting evidence presented a factual dispute for jury resolution.

*Givens v. State*, 967 So. 2d 1, 7 (Miss. 2007) (citing *Jones v. State,* 920 So. 2d 465, 472-73 (Miss. 2006)).

¶23.   Based on the testimony presented, the Court finds that the "verdict is [*not*] so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Herring,* 691 So. 2d at 957 (emphasis added).

## CONCLUSION

¶24.   Issue I has no merit, as there was no Motion for Continuance, whether written or verbal. Regarding Issues II, III and IV, the State presented evidence which would allow reasonable and fair-minded jurors to reach the verdict rendered in the case sub judice. The verdict of the trial court is therefore affirmed.

¶25.   **CONVICTION OF GRATIFICATION OF LUST AND SENTENCE OF FIFTEEN (15) YEARS, TEN (10) YEARS SUSPENDED, FIVE (5) YEARS TO SERVE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TWO YEARS SUPERVISED PROBATION AND TWO (2) YEARS POST RELEASE SUPERVISION, AFFIRMED.**

**SMITH, C.J., WALLER AND DIAZ, P.JJ., EASLEY, CARLSON, GRAVES, DICKINSON AND LAMAR, JJ., CONCUR.**