995 So.2d 831 (2008)
Nathaniel THOMPSON, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2007-KA-01338-COA.
Court of Appeals of Mississippi.
September 2, 2008.
Rehearing Denied December 2, 2008.
Benjamin A. Suber, attorney for appellant.
Office of the Attorney General by W. Glenn Watts, attorney for appellee.
Before MYERS, P.J., IRVING and CARLTON, JJ.
IRVING, J., for the Court.
¶ 1. Nathaniel Thompson was convicted by a jury of burglary of a building and sentenced by the Claiborne County Circuit Court to serve six years in the custody of the Mississippi Department of Corrections. Aggrieved, Thompson appeals and asserts that his counsel was ineffective for failing to request an accomplice instruction, that the evidence against him is insufficient, and that his conviction is against the overwhelming weight of the evidence.
¶ 2. Finding no reversible error, we affirm.

FACTS
¶ 3. On January 8, 2007, Michelle Burrell, the then director of Parks and Recreation for Claiborne County, arrived at work to discover that her office had been *832 broken into. Burrell noticed that a public address system (PA), a digital camera, and approximately eighty dollars in cash were missing. Burrell had recently purchased the PA for approximately $850. Burrell estimated that the camera had cost around three hundred dollars. Although the PA was recovered by the time of trial, the camera and the cash had not been recovered.
¶ 4. Sometime after the break-in, Deputy Carl Fleming with the Claiborne County Sheriff's Department was speaking with Scotty Craft about an unrelated charge when Craft admitted that he and Thompson had stolen the items taken from Burrell's office. Craft also told Deputy Fleming that the PA could be found at Thompson's mother's house. The PA was thereafter recovered from Thompson's mother's house.
¶ 5. Prior to trial, Craft pleaded guilty to burglarizing the office and was sentenced to six years in the custody of the Mississippi Department of Corrections. At trial, Craft testified that he agreed to steal the PA for Thompson in exchange for other goods. Craft testified that Thompson convinced him to burglarize the building; in fact, Craft averred that if Thompson had not asked for the PA, Craft would have never broken into the office. He also testified that Thompson drove him to the site of the burglary, where Craft broke into the building using a screwdriver. Craft never indicated that Thompson entered the building. Craft stated that after loading the stolen items into Thompson's car, they left and went to Thompson's house. Craft indicated that the digital camera was given to Chris Parker, Thompson's girlfriend at the time. The jury was never formally told that Craft and Thompson were indicted together for jointly burglarizing the office. However, the jury was told that Craft had already pleaded guilty to burglarizing the office and had received a sentence of six years for his part in the crime.
¶ 6. Deputy Fleming testified that the door to the office had been jimmied open using some sort of metal object. He stated that there had been no attempt to take fingerprints from the scene. Parker testified at trial that Craft attempted to get Thompson to buy a camera and that she told Thompson not to buy it because Craft did not have a receipt for the camera. Parker also confirmed that Thompson had called her from jail and asked her to bring him the camera. She testified that they hung up after she told Thompson that she did not have the camera.
¶ 7. Thompson testified that he did not drive Craft to the office on the day it was burglarized. In fact, Thompson testified that the car that Craft claims that they took to the office was inoperable on the day in question. Several witnesses testified that the engine for the car in question was hanging in a tree on the day of the burglary. Eddie Green, a mechanic, testified that he was working on the car during the time in question and that the car was inoperable on January 7.
¶ 8. Thompson testified that Craft came to Thompson's house sometime on January 7 and offered to sell him the PA and the camera. Thompson indicated that he bought "the goods" from Craft for one hundred dollars, with the understanding that Craft might return and repurchase the goods later. Thompson testified that he took the PA because he thought it might be fun to have for parties. He also testified that he later became concerned that the PA might be stolen if it remained at his house; therefore, he took it to his mother's house for safekeeping. It was never clear from Thompson's testimony whether he bought only the PA or whether he also bought the camera. Several other *833 witnesses corroborated Thompson's testimony that Craft came to the house on January 7, attempting to sell a PA and a camera. There was also testimony to the effect that Thompson specifically inquired of Craft whether the goods were stolen and that Craft assured Thompson that the PA and the camera were not stolen.
¶ 9. Thereafter, the jury found Thompson guilty of burglary of a building. Additional facts, as necessary, will be related during our analysis and discussion of the issues.

ANALYSIS AND DISCUSSION OF THE ISSUES

1. Accomplice Instruction
¶ 10. Thompson asserts that his trial counsel was ineffective for failing to request an instruction telling the jury to regard Craft's testimony as an accomplice with heightened scrutiny.
¶ 11. We find that we need not reach a disposition of this issue, as the record before us is not ripe for review of this contention. Therefore, we affirm without prejudice to Thompson's right to raise this issue in his post-conviction proceedings. As we found in Terrell v. State, 952 So.2d 998, 1007(¶ 40) (Miss.Ct.App.2006):
When a party raises an ineffective assistance of counsel claim on direct appeal, the proper resolution is to deny relief without prejudice to the defendant's right to assert the same claim in a post-conviction relief proceeding. Pittman v. State, 836 So.2d 779(¶ 38) (Miss.Ct.App. 2002). "We should reach the merits on an ineffective assistance of counsel issue on direct appeal only if (1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge." Id. at (¶ 39).
(Emphasis added). Although Thompson indicated in his brief that he would stipulate to the adequacy of the record, no such stipulation has been offered by the State. Furthermore, this Court finds that post-conviction proceedings may give Thompson's trial attorney a fair opportunity to explain the lack of a request for an accomplice instruction. In a case such as this, normally it would be standard practice for the defense counsel to request such an instruction. However, on the record before us, we cannot find that the absence of such an instruction equates to ineffective assistance on the part of defense counsel. If defense counsel consciously decided to forego requesting an accomplice instruction, he may have done so as a part of his trial strategy. Therefore, as stated, we affirm but recognize Thompson's right to raise this issue in a post-conviction appeal.

2. Sufficiency of the Evidence
¶ 12. The Mississippi Supreme Court has an established standard when reviewing the sufficiency of the evidence supporting a conviction:
When reviewing a case for sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Bush v. State, 895 So.2d 836, 843 [(¶ 16)] (Miss.2005) (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). The evidence must show "beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction." Id. *834 (quoting Carr v. State, 208 So.2d 886, 889 (Miss.1968)). If "reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense," the evidence will be deemed to have been sufficient. Id. (quoting Edwards v. State, 469 So.2d 68, 70 (Miss. 1985)).
Ford v. State, 975 So.2d 859, 869(¶ 35) (Miss.2008).
¶ 13. Having reviewed the evidence in this case, we find that it was sufficient. We note at the outset that "the jury is the sole judge of the credibility of the witness." Id. at 869(¶ 36) (citing Gathright v. State, 380 So.2d 1276, 1278 (Miss.1980)). Therefore, although Thompson and others testified on his behalf, the jury was entitled to believe whomever's story it found most credible. Craft's testimony and the corroboration provided by other State witnesses supplied sufficient evidence for a conviction. Craft testified that he and Thompson agreed that Craft would steal the PA for Thompson in return for other goods. Craft went on to testify that Thompson drove him to the office where the burglary occurred and that they thereafter left and returned to Thompson's house with the stolen goods. In fact, the PA was eventually recovered from Thompson's mother's house. Thompson's mother testified, contrary to Thompson's own testimony, that Craft and Thompson brought the PA to her house together. When questioned by the State, Craft testified that he had not been offered anything for his testimony and that he was telling the truth.
¶ 14. Craft's version of events was consistent with the testimony of Deputy Fleming, who noted that the office door appeared to have been jimmied open with some sort of metal object. Deputy Fleming also testified that the PA was extremely heavy and that it would be difficult for one person to transport the PA any significant distance. Furthermore, there was testimony to the effect that Thompson called Parker from jail and asked her to get the camera to help exonerate him. Part of Thompson's explanation for why he did not participate in the burglary was that if he wanted an expensive item such as the PA, he had the funds to simply go buy it, regardless of the cost of the item. The jury may have found that statement incredible, as Thompson also stated that he spends his days playing games and smoking marijuana. Thompson admitted that he was not currently employed. However, he claimed to have saved money from some employment during the previous year. Therefore, the jury may have found questionable Thompson's assertion that he had the funds to buy any item as he pleased.
¶ 15. In short, reasonable jurors could have reached different conclusions regarding each element of the offense.[1] This contention of error is without merit.

3. Weight of the Evidence
¶ 16. The Mississippi Supreme Court has also established a standard for determining whether a conviction is against the overwhelming weight of the evidence in a case:

*835 We will disturb a jury verdict only when "it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." [Bush, 895 So.2d at 844(¶ 18)] (citing Herring v. State, 691 So.2d 948, 957 (Miss.1997)). This Court acts as a "thirteenth juror" and views the evidence in the light most favorable to the verdict.... Id. (citing Herring, 691 So.2d at 957).
Boone v. State, 973 So.2d 237, 242(¶ 18) (Miss.2008) (quoting Brown v. State, 970 So.2d 710, 713(¶ 8) (Miss.2007)).
¶ 17. Having reviewed the record in "the light most favorable to the verdict," we cannot find that allowing Thompson's conviction to stand sanctions an "unconscionable injustice." There was evidence presented from which the jury could reasonably find that Thompson was guilty of burglary of a building. This contention of error is also without merit.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF CLAIBORNE COUNTY OF CONVICTION OF BURGLARY OF A BUILDING AND SENTENCE OF SIX YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO CLAIBORNE COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] The elements of burglary of a building are set out by Mississippi Code Annotated section 97-17-33 (Rev.2006), which states:

(1) Every person who shall be convicted of breaking and entering, in the day or night, any shop, store, ... or other building or private room or office therein ... in which any goods, merchandise, equipment or valuable thing shall be kept for use, sale, deposit, or transportation, with intent to steal therein, or to commit any felony ... shall be guilty of burglary, and imprisoned in the penitentiary not more than seven (7) years.