ISHEE, J„
for the Court:
¶ 1. On September 22, 2008, Patrick W. Cox was tried before a Hinds County Circuit Court jury for carjacking, kidnapping, and the forcible rape of J.R. On September 29, 2008, the jury returned a verdict of guilty on all three counts. After denial of his post-trial motions, Cox filed this appeal. Finding no error, we affirm.
FACTS
¶ 2. On November 11, 2007, J.R., while filling her car with gas, was approached by a man, later identified as the defendant, Cox, who threatened to kill her if she did not do what he said. Cox forced J.R. into the backseat of her Chevrolet Equinox, and as she pleaded for him to release her, Cox drove away from the gas station. J.R. remembered she had her cell phone in her back pocket, and as discretely as possible, she dialed numbers in an effort to be rescued. She first dialed 911; not knowing if her call had been received, she then dialed her friend, Maria Wright, and then her ex-husband, Gregory Young. J.R. left the phone on while she continued to plead with Cox to let her go.
¶ 3. Cox eventually pulled the car over and got into the backseat with J.R. and demanded that she remove her clothes. J.R. testified that Cox began to lick her neck and breast, and once J.R. removed her clothes, Cox raped her. Fortunately, as Cox was distracted by another vehicle passing by, J.R. was able to escape from her backseat and run to a BP gas station operated by Willie Harris. Harris let J.R. into his store, found her something to cover up with, and called the police.
¶ 4. J.R. was then taken to the University of Mississippi Medical Center (UMC). While at the hospital, J.R. was interviewed by Martha Pentecost, a UMC social worker, and Patty Welch, a UMC registered nurse. Jackson Police Officer Taafee N. Hughes and Detective Kimberly Brown were also present for the interview. In the interview, J.R. told Pentecost and Welch that she had been kidnapped and forced into her car against her will. She further testified that she was raped, and a rape kit was then prepared to test J.R.’s *184 person. Welch also noted that she found “redness” on J.R.’s labia minor.
¶ 5. Just off Highway 49, Officer Malcom Macon found J.R.’s vehicle. As Officer Macon focused his flashlight on J.R.’s car, someone jumped out of the car and began to run. Deputy Jon Cooley accompanied by a dog tracker, Stella, was also at J.R.’s abandoned car. After acquiring a scent from the front seat of J.R.’s car, Stella began to move north; eventually, Stella made her way to a clearing and stopped beside a different abandoned car, where officers found Cox inside. Officer Macon testified that when they found Cox, he was sweating, panting, and acting “very nervous.”
¶ 6. During Detective Brown’s interview of J.R., officers presented J.R. with a photographic lineup of suspects also found in abandoned cars in the clearing. Brown testified J.R. became hysterical when she saw the photograph of Cox, exclaiming “that’s him.”
¶ 7. At trial, two DNA analysts testified on behalf of the State. Gina Pineda testified she had found sufficient genetic material to determine that Cox’s DNA profile was present on J.R.’s breast and neck. Further, she testified the black hat found by Officer Charles Taylor in J.R.’s abandoned car also had sufficient genetic material to determine it was Cox’s DNA present on the hat. Katryn Moyse, another DNA analyst, testified she also found sufficient genetic material to determine that Cox’s DNA profile was present “inside” J.R.’s vagina.
¶ 8. Based on discrepancies in the testimonies of investigators regarding who had taken the rape kits to the laboratory for analysis, Cox objected to the admittance of the rape kits that were performed on J.R. and Cox. Because there was no evidence of tampering or any break in the chain of custody, the trial court admitted the rape kits into evidence. Cox also objected to the testimony of Pentecost on the ground that her testimony was hearsay; this objection was also overruled by the trial court.
¶ 9. Cox also objected to the trial court giving jury instruction S-4, claiming the language used in the instruction significantly broadened the crime of rape, which subjected him to an ex-post-facto law in violation of his constitutional rights. After a review of the statutory amendments and a review of the relevant case law, the trial court decided jury instruction S-4 did not alter or substitute new elements for rape and was, therefore, permissible.
¶ 10. A Hinds County jury found Cox guilty on all three counts, and he received consecutive sentences of thirty, twenty-eight, and fifteen years in the custody of the Mississippi Department of Corrections. Aggrieved, Cox has filed this appeal. Finding no error, we affirm.
DISCUSSION

I. Jury Instruction

¶ 11. Cox first asserts that the trial court committed reversible error in giving instruction S-4[1] and in denying instructions D-6 and D-7. He argues the instruction S-4 impermissibly subjected him to an ex-post-facto law in violation of his constitutional rights.
*185 ¶ 12. The standard for review in challenging a jury instruction is well settled: “In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole[; w]hen so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found.” Davis v. State, 909 So.2d 749, 752 (¶ 11) (Miss.Ct.App.2005) (citation omitted). Moreover, “[a] defendant is entitled to have jury instructions given which present his theory of the case[;] however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.” Smith v. State, 802 So.2d 82, 88 (¶ 20) (Miss.2001) (citations omitted).
¶ 13. Cox was indicted under Mississippi Code Annotated section 97-3-65(6) (Rev.2006). On November 11, 2006, the date that the crime occurred, section 97-3-65(6) stated:
For the purposes of this section, “sexual intercourse” shall mean a joining of the sexual organs of a male and female human being in which the penis of the male is inserted into the vagina of the female.
In 2007, the Mississippi Legislature amended 97-3-65(6) to make the crime gender neutral. After 2007, section 97-3-65(6) now reads as follows:
For the purposes of this section, “sexual intercourse” shall mean a joining of the sexual organs of a male and female human being in which the penis of the male is inserted into the vagina of the female or the penetration of the sexual organs of a male or female human being in which the penis or an object is inserted into the genitals, anus or perineum of a male or female.
¶ 14. After hearing arguments from both sides, and after reviewing the changes in the statute and the relevant case law, the trial court found that jury instruction S-4 was a proper instruction. Although it is true the statute was changed after the crime was committed, the change did not alter or significantly broaden the crime that was committed against J.R. In fact, the statute was changed in order to make the crime of forcible rape gender neutral. Cox was indicted for the forcible rape of a female. Had he been charged with the forcible rape of a male, we may have come to a different conclusion. After a review of the instructions as a whole, we find that the trial court gave an accurate recitation of the law; therefore, this issue is without merit.

II. Chain of Custody

¶ 15. Cox argues that the trial court improperly admitted the rape kits performed on J.R. and Cox. He claims that, because there was a contradiction in the testimonies of those responsible for the chain of custody, the rape kits should not have been admitted into evidence.
¶ 16. The Mississippi Supreme Court has held that “the test of whether there has been a proper showing of the chain of possession of evidence is whether there is any indication or reasonable inference of probable tampering with the evidence or substitution of the evidence.” White v. State, 722 So.2d 1242, 1244 (¶ 12) (Miss.1998) (citations omitted). However, “the burden to produce evidence of a broken chain of custody (i.e., tampering) is on the defendant.” Id. at 1245 (¶ 13). Additionally, “[mjatters regarding the chain of custody of evidence are largely left to the discretion of the trial judge, and ‘unless this judicial discretion has been so abused as to be prejudicial to the defendant, this Court will not reverse the ruling of the *186 trial court.’ ” Doby v. State, 532 So.2d 584, 588 (Miss.1988) (quoting Morris v. State, 436 So.2d 1381, 1388 (Miss.1983)).
¶ 17. Although it is true that Officer Wayne Monroe and Officer Kenny Lewis both testified as to being the one who had delivered the rape kits to the Scales Laboratory for testing, the trial court concluded that any discrepancies regarding who had taken the kits to the lab, and then returned them after testing, could be dealt with on cross-examination. Further, both DNA analysts who ran tests on the rape kits gave testimony regarding the condition of the kits, and both agreed that there was no evidence of contamination or degradation when the kits were submitted for testing. Cox has failed to produce evidence of a broken chain of custody. Moreover, no abuse of judicial discretion has been demonstrated here. This claim is devoid of merit.

III. Hearsay Testimony

¶ 18. Cox next takes issue with the admittance of Pentecost’s testimony believing the testimony does not meet the requirements of Mississippi Rule of Evidence 803(4). Rule 803(4) exempts statements made for purposes of medical diagnosis and treatment from the otherwise stringent prohibition against hearsay, regardless of the availability of the declar-ant. M.R.E. 803(4). Specifically, the rule states:
Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment, regardless of to whom the statements are made, or when the statements are made, if the court, in its discretion, affirmatively finds that the proffered statements were made under circumstances substantially indicating their trustworthiness. For purposes of this rule, the term “medical” refers to emotional and mental health as well as physical health.
¶ 19. This Court applies an abuse-of-discretion standard of review regarding the admissibility of testimonial evidence. Harris v. State, 861 So.2d 1003, 1018 (¶ 41) (Miss.2003). We leave such admissions to the sound discretion of the trial judge, and reversal is only warranted when the abuse of discretion prejudices the accused. Id.
¶ 20. Cox argues that because Pentecost is not a diagnostician, her testimony is inadmissible. The rule states that if the trial court finds the circumstances surrounding the statement indicate substantial trustworthiness, the statement can be admitted regardless as to whom the statement was made. The trial court found that because the statements were made after J.R. had just been brought into the hospital and because they were made in the company of a nurse and a police officer, there was enough trustworthiness to admit the statements. Furthermore, Pentecost’s testimony was corroborated by a UMC registered nurse, Welch, and J.R. herself. Accordingly, this issue is without merit.

IV. Sufficiency of Evidence

¶ 21. In his fourth assignment of error, Cox asserts that there was insufficient evidence to support a guilty verdict. We disagree. In Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.Ct.App.2005), the supreme court reiterated the standard of review for a sufficiency-of-the-evidenee claim, stating:
[I]n considering whether the evidence is sufficient to sustain a conviction in the face of a motion for directed verdict or for [a] judgment notwithstanding the *187 verdict, the critical inquiry is whether the evidence shows “beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.”
The supreme court went on to clarify itself, stating that the inquiry does not require a court to “ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Id. (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560, (1979)).
¶ 22. We find that, after a review of the record, there was sufficient, credible, substantial evidence for the jury to consider and return a verdict of guilty. J.R.’s use of her cell phone during the attack, the DNA analysts who corroborated her testimony, and the fact that the nurse found “redness” or “erythema” on J.R.’s labia minor all point to a verdict of guilty. Therefore, this issue is without merit.

V. Civil Suit

¶23. Cox, on his final issue for appeal, asserts that the trial court’s decision to exclude evidence of a civil action, which was filed by J.R. against the convenience store where she was abducted, unfairly prevented him from being able to show bias or prejudice on the part of J.R. This Court’s review of the admission of evidence is limited. The standard of review for the admission or exclusion of evidence is abuse of discretion. Williams v. State, 991 So.2d 593, 597 (¶ 8) (Miss.2008) (citing Brown v. State, 969 So.2d 855, 860 (¶ 13) (Miss.2007)). Therefore, “a trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Unless the judge abuses this discretion so as to be prejudicial to the accused, the [appellate court] will not reverse [the] ruling.” Id. (quoting Shaw v. State, 915 So.2d 442, 445 (¶ 8) (Miss.2005)).
¶ 24. The trial court found that, under Mississippi Rule of Evidence 401, any mentioning of the civil suit would not be relevant to the guilt or innocence of Cox regarding the charges submitted to the jury. Further, the trial court found that, even if the evidence was considered relevant, it could be excluded under Mississippi Rule of Evidence 403.
¶ 25. “[Mississippi Rule of Evidence] 403 is the ultimate filter through which all evidentiary objections eventually flow.” Ware v. Entergy Miss., Inc., 887 So.2d 763, 774 (¶ 29) (Miss.2003). “Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.” M.R.E. 403. Here, the trial court found that any mention of the civil suit filed by J.R. would be highly prejudicial and misleading to the jury. Cox has offered no compelling argument as to how the trial court abused its discretion in not allowing the testimony. Accordingly, this final issue is also without merit.
¶ 26. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, FORCIBLE RAPE, AND SENTENCE OF TWENTY-EIGHT YEARS; COUNT II, CARJACKING, AND SENTENCE OF FIFTEEN YEARS; AND COUNT III, KIDNAPING, AND SENTENCE OF THIRTY YEARS, WITH SENTENCES *188 TO RUN CONSECUTIVELY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR.

. Instruction S-4 states: "... some penetration of the sexual organ of the female by the sexual organ of the male must be proved. However, it need not be full penetration. Proof of the slightest penetration of the sexual organ of the female by the sexual organ of the male is proof of sexual intercourse. It is not necessary that the vagina be entered or that the hymen by ruptured; the entering of the vulva or labia by the male sex organ is sufficient.”