LEE, C.J.,
for the Court:
PROCEDURAL HISTORY
¶ 1. Andrea Diane McKay was convicted in the Harrison County Circuit Court of murder and sentenced to life in the custody of the Mississippi Department of Corrections.
¶ 2. McKay filed a motion for a judgment notwithstanding the verdict or a new trial, which was denied by the trial court. McKay now appeals, asserting that the evidence was insufficient to support the jury’s verdict. McKay seeks to be resen-tenced for manslaughter or, in the alternative, granted a new trial. Finding no error, we affirm.
FACTS
¶ 3. McKay and Vincent Weathersby, the victim, have two children together, and the couple had been in an on-again-off-again relationship for three years. Although they had separated, McKay and Weathersby lived across the street from one another in Gulfport, Mississippi. They rented houses from the same landlord.
¶ 4. According to McKay, she saw Weathersby in his driveway on April 21, *646 2008, and went to ask him if their eight-year-old daughter was at his house. McKay and Weathersby began arguing. McKay accused Weathersby of talking about her to their landlord. McKay testified that she was standing on the passenger’s side of Weathersby’s van, and Weathersby was sitting in the driver’s seat. According to McKay, Weathersby came around to the passenger’s side of the van, pushed McKay to the ground, and ordered her to get out of his yard. McKay’s sixteen-year-old daughter got involved in the altercation. McKay claims that she became angry because Weathers-by hit her daughter in the face. McKay ran across the street to her house and returned with a two-prong barbecue fork in her hand. She intended to stab Weath-ersby with the fork, but she punctured one of Weathersby’s tires instead. McKay then ran back to her house. She returned to Weathersby’s yard once again and picked up a steak knife off the ground near Weathersby’s van. Weathersby was standing in the doorway to his house when McKay came at him with the knife. She stated her intention was to cut him, but she unintentionally stabbed him in the neck. She ran back to her house. Weath-ersby also ran toward McKay’s house, but he collapsed 'in the street. Weathersby stayed in the hospital for ten days before dying as a result of the stab wound to his neck.
¶ 5. McKay turned herself in to the police the day after the stabbing.
STANDARD OF REVIEW
¶ 6. Our standard of review in regard to challenges to the sufficiency of the evidence is well settled. “[T]he critical inquiry is whether the evidence shows ‘beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed[.]’ ” Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (citation omitted). If, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found, beyond a reasonable doubt, that the essential elements of the crime existed, this Court will affirm the conviction. Id. However, it is well-settled law that the jury determines the credibility of witnesses and resolves conflicts in the evidence. Davis v. State, 866 So.2d 1107, 1112 (¶ 17) (Miss.Ct. App.2003).
DISCUSSION
¶7. McKay argues that she acted in the heat of passion; thus, the evidence supported a conviction of manslaughter rather than murder.
¶8. The jury was instructed on both murder and heat-of-passion manslaughter.
¶ 9. Manslaughter is defined in Mississippi Code Annotated section 97-3-35 (Rev.2006) as follows:
The killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense, shall be manslaughter.
¶ 10. Murder is defined in Mississippi Code Annotated section 97-3-19 (Rev. 2006) as follows:
(1) The killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases:
(a) When done with deliberate design to effect the death of the person .killed, or of any human being;
(b) When done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect *647 the death of any particular individual....
¶ 11. McKay admits that she intentionally stabbed Weathersby, but she argues that she did not act with deliberate design to kill him. She states that she was angry at Weathersby for hitting her daughter in the face, but she did not want to kill Weathersby, as he was the father of two of her children. The State’s position is that ample time had passed between the argument and the stabbing for the jury to find that McKay had acted with deliberate design.
¶ 12. Leonard Bankston, Weathersby’s friend, testified for the State. He testified that after the initial argument between McKay and Weathersby, McKay and her daughter returned to McKay’s house. McKay then returned to Weathersby’s yard and slashed his tire. Bankston estimated that two-and-one-half to three minutes passed between the time McKay went back to her house until she slashed Weath-ersby’s tire. He testified that McKay then ran back to her house and spoke to her daughter and boyfriend before running back to Weathersby’s house with a knife in her hand. He estimated that two to three minutes passed between these events. Bankston testified that when McKay arrived at Weathersby’s door, Weathersby was knelt down hugging his son and facing the inside of his house. Bankston saw something shiny in McKay’s hand and yelled, “Vincent, watch out.” Bankston stated that he saw McKay make one stabbing motion with the knife before she ran back to her house. Bankston testified that, contrary to McKay’s and her daughter’s testimony, he did not see Weathersby strike McKay’s daughter in any way.
¶ 13. Inekia Johnson, McKay’s daughter, testified that Weathersby hit her approximately five times and pulled her hair. Johnson testified that Weathersby also hit McKay until she fell to the ground, and then he got on- top of her and hit her with both of his hands.
¶ 14. Dr. Paul McGarry, a forensic pathologist, testified that Weathersby exhibited a diagonal wound consistent with being stabbed with a knife blade from an overhead motion. Dr. McGarry opined that Weathersby had died from blood loss and blood accumulation in his lungs caused by the knife wound. Dr. McGarry found no scratches or bruises on Weathersby’s hands.
¶ 15. ‘Whether a homicide is classified as a murder or manslaughter is ordinarily an inquiry to be made by the jury.” Hodge v. State, 823 So.2d 1162, 1166 (¶ 16) (Miss.2002). Viewing the evidence in the light most favorable to the State, we find that the essential elements of the crime of murder were sufficiently proven such that a jury could find McKay guilty beyond reasonable doubt. The jury heard conflicting evidence regarding the altercation between McKay and Weathersby. The jury also heard that several minutes had passed between the initial argument and the stabbing. In order to find McKay guilty of murder, the jury had to determine that she had acted with deliberate design or in a way that was “eminently dangerous to others and evincing a depraved heart....” Miss.Code Ann. § 97 — 3—19(l)(a)—(b). We find that the jury’s decision was supported by the evidence. This issue is without merit.
¶ 16. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
*648 IRVING AND GRIFFIS, P.JJ., MYERS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.