ROBERTS, J.,
 

 for the Court:
 

 ¶ 1. This appeal stems from Terry O. Johnson Jr. a/k/a Terry O Johnson’s convictions on May 28, 2010, in the Washington County Circuit Court for armed robbery, armed carjacking, kidnapping, burglary of a dwelling, and a sentence enhancement for the use of a firearm during the commission of armed robbery, armed carjacking, and kidnapping. On June 3, 2010, Johnson was sentenced to serve a total of fifteen years followed by
 
 *302
 
 five years of post-release supervision (PRS), all in the custody of the Mississippi Department of Corrections (MDOC). Following his trial and sentencing hearing, Johnson filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a motion for a new trial. The circuit court entered an order on June 24, 2010, denying Johnson’s motion. Johnson now appeals.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. On April 16, 2009, Johnson and Xe-zavion Taylor attended a barbecue at the home of Johnson’s brother-in-law. That night, Johnson and Taylor left the barbecue and proceeded to Kendall Franklin’s home to ask for a ride home. Franklin, a former boyfriend of Johnson’s mother, reluctantly agreed to give them a ride to Johnson’s home at the January Apartments. At trial, Franklin testified to the following series of events. After agreeing to give the two a ride, Franklin got into the driver’s seat of his car while Johnson rode in the passenger seat and Taylor rode in the backseat. En route to the apartment, Taylor pulled a gun, held it to the back of Franklin’s head, and demanded money from him. Franklin informed Taylor that he had no money on him. With the gun still pulled, Taylor instructed Franklin to drive to the levee. Once at the levee, Taylor told Franklin to get into the passenger seat so he could drive. Johnson got in the backseat. Taylor began driving Franklin’s car toward Carver Circle. Before reaching Carver Circle, Taylor pulled the car over and again demanded money from Franklin; however, when Franklin replied he had none, Taylor struck Franklin multiple times on his head with the back of the gun. He then told Franklin to open the passenger door where he shot the gun out of the door two or three times. Taylor then began driving toward Carver Circle again, but they stopped at some apartments near Wed-dington. Taylor handed the gun to Johnson and got out of the car to talk to some people who had pulled up in a car behind them. Now in possession of the gun, Johnson ordered Franklin to keep looking forward. When Taylor returned to the car, he asked Johnson if he knew anyone who could help; Johnson handed the gun back to Taylor and responded that he did know someone who could help. Taylor began driving toward the January Apartments. At the January Apartments, Johnson got out of the car and returned with an unidentified male. Once Johnson and the unidentified male got into Franklin’s ear, Taylor drove back to Franklin’s house. Upon arriving at Franklin’s house, Johnson and the unidentified male got out of the car, entered Franklin’s room, and carried items from Franklin’s room to the trunk of the car; Taylor was still in possession of the gun and remained in the car with Franklin. Johnson and the unidentified male got back into the car, and they drove back toward the apartments near Weddington. There, Taylor got out of the car to talk to other people in a different car while Johnson and the unidentified male moved the stolen items from Franklin’s car’s trunk to the other car’s trunk. Johnson and the unidentified male got into the other car, and Taylor and Franklin left in Franklin’s car heading toward the levee. At the levee, Taylor forced Franklin to exit the car and climb into the car’s trunk. Taylor drove around with Franklin in the trunk for approximately ten to fifteen minutes before parking. Franklin heard a second car pull up, and Taylor got in that car and left. Using some tools in the trunk, Franklin was able to free himself and walk home where he called the police to report the crime. Franklin testified that
 
 *303
 
 a wallet with $51, speakers, clothes, shoes, a car CD player, woofers, an amplifier, and his cell phone were stolen from him. Relying on Franklin’s identification of Johnson as an involved party, the police arrested Johnson almost a month later. Johnson provided the police with Taylor’s name. The police subsequently arrested Taylor. The police provided Franklin with a photographic lineup from which he selected Taylor as the man who was also involved that night.
 

 ¶ 3. However, at trial, Johnson provided a different version of the events of that night. Johnson testified he had made no plans with Taylor to rob Franklin and that he did not know if Taylor had a gun before he pulled it on Franklin. He also disputed Franklin’s testimony by claiming he was originally in the backseat and not the passenger seat. Johnson further testified that he was shocked and scared when Taylor pulled out the gun. He claimed that when Taylor pulled the gun, he laid down in the backseat and pretended to be asleep. He claimed he was fearful of what Taylor was going to do to them. Johnson’s testimony again differs from Franklin’s testimony in that Johnson claims that after Taylor hit Franklin with the gun, Taylor made Johnson get out of the car so a few other guys could get in instead. Johnson testified that he stood there waiting because he was unfamiliar with the area and was scared he would get lost; however, just a short while later, Taylor and Franklin returned to pick him up. From there, Taylor drove Johnson home and threatened to kill him if he told anyone about what had happened.
 

 ¶ 4. Based on the facts presented to the police, Johnson was indicted on November 23, 2009, on the following counts: Count I, armed robbery; Count II, armed carjacking; Count III, kidnapping; and Count IV, house burglary. He was also indicted under Mississippi Code Annotated section 97-37-37(1) (Supp. 2011), which provides an enhanced sentence for the use of a firearm during the commission of a felony. Johnson’s trial began on May 27, 2010, and ended on May 28, 2010, with the jury unanimously convicting Johnson on all counts and the firearm enhancement. At Johnson’s sentencing hearing on June 3, 2010, the circuit judge ordered Johnson to serve ten years on each Counts I, II, and III. He then ordered Johnson to serve fifteen years with ten years to serve and five years of post-release supervision (PRS) on Count IV. Johnson was also sentenced to an additional five years for his conviction in the firearm enhancement in Count V. All these sentences were to be served in the custody of the MDOC. The circuit judge ordered Johnson’s sentences in Counts I, II, III, and IV to run concurrently with one another; his sentence on the firearm enhancement would run consecutively to his other sentences. In sum, Johnson would serve a total of fifteen years in the custody of the MDOC with an additional five years of PRS.
 

 ¶ 5. Johnson filed a motion for a JNOV or, in the alternative, a new trial; the circuit judge denied this motion. On appeal, Johnson raises the following issues:
 

 I. Whether there was sufficient evidence to support Johnson’s convictions on each count.
 

 II. Whether the circuit court erred in denying a jury instruction on Johnson’s theory of the case.
 

 STANDARD OF REVIEW
 

 ¶ 6. In Johnson’s first issue, he appeals the circuit judge’s denial of his JNOV motion. Appealing a denial of a motion for a JNOV raises a challenge to the legal sufficiency of the evidence.
 
 Bush v. State,
 
 895 So.2d 836, 844 (¶ 16) (Miss.2005). The Mississippi Supreme Court has clearly stated that our standard of review on this
 
 *304
 
 issue is to determine “whether the evidence shows ‘beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.’”
 
 Id.
 
 (quoting
 
 Carr v. State,
 
 208 So.2d 886, 889 (Miss.1968)). However, “[i]f, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found, beyond a reasonable doubt, that the essential elements of the crime existed, this Court will affirm the conviction.”
 
 McKay v. State,
 
 59 So.3d 644, 646 (¶ 6) (Miss.Ct.App.2011) (citing
 
 Bush,
 
 895 So.2d at 844 (¶ 16)).
 

 ¶ 7. Johnson’s second issue involves the circuit judge’s decision to deny a jury instruction on duress, a purported theory of defense in Johnson’s case. In
 
 Cox v. State,
 
 66 So.3d 182, 185 (¶ 12) (Miss.Ct. App.2010), this Court stated our standard of review as follows:
 

 The standard for review in challenging a jury instruction is well settled: “In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole[; wjhen so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found.” Moreover, “[a] defendant is entitled to have jury instructions given which present his theory of the case[;] however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.”
 

 (Internal citations omitted).
 

 ANALYSIS
 

 I. Sufficiency of the Evidence
 

 ¶ 8. Johnson first challenges whether there was sufficient evidence presented at trial for a jury to convict him of all the counts. In this case, it is important to note that the jury was given an instruction on aiding and abetting. Mississippi case law provides: “Any person who is present at the commission of a criminal offense and aids, counsels, or encourages another in the commission of that offense is an ‘aider and abettor’ and is equally guilty with the principal offender.”
 
 Glenn v. State,
 
 996 So.2d 148, 153 (¶ 18) (Miss.Ct.App.2008) (internal citations omitted). The jury instruction was worded similarly, stating:
 

 If another person in acting under the direction of the Defendant (Johnson) or if the Defendant (Johnson) joins another person and performs acts with the intent to commit a crime, then the law holds the Defendant (Johnson) responsible for the acts and conduct of such other persons just as though the Defendant (Johnson) had committed the acts or engaged in such conduct.
 

 Before any Defendant (Johnson) may be held criminally responsible for the acts of others, it is necessary that the accused (Johnson) deliberately associate himself in some way with the crime and participate in it with the intent to bring about the crime.
 

 Based on this instruction, the jury did not have to find that Johnson committed the acts by himself, but that he joined with Taylor and performed acts with the intent to commit the crime.
 

 A. Armed Robbery
 

 ¶ 9. Johnson was convicted of violating the armed-robbery statute found in Mississippi Code Annotated section 97-3-79 (Supp. 2011). The statute provides: “Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of an
 
 *305
 
 other and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapons shall be guilty of robbery....”
 
 Id.
 
 Johnson argues the State failed to prove Johnson actually took any of Franklin’s property as a result of violence or putting Franklin in fear of injury and that Johnson never put Franklin in fear or used any force. Further, Johnson argues that Franklin’s testimony never implicated Johnson in the crime because Johnson did not pull the gun or demand money. Johnson testified that he never participated or assisted Taylor in robbing Franklin, and he was shocked and pretended to be asleep when Taylor pulled the gun and demanded money from Franklin.
 

 ¶ 10. Johnson testified as to his version of the events that transpired that night, but so did the victim, Franklin. Franklin testified that Johnson did, in fact, hold Franklin at gunpoint and demand Franklin keep looking forward. Additionally, the reason no property was taken was because Franklin had none to give them. It is well established that the crime of armed robbery is complete at the attempt to take the property and not at the actual taking of property.
 
 Croft v. State,
 
 992 So.2d 1151, 1159 (¶ 33) (Miss.2008);
 
 Putnam v. State,
 
 877 So.2d 468, 471 (¶ 10) (Miss.Ct.App.2003).
 

 ¶ 11. Although Johnson and Franklin provided two different versions of the event, it is within the province of the jury to determine the credibility of the witnesses and give weight to conflicting testimony.
 
 Russell v. State,
 
 834 So.2d 714, 718 (¶ 18) (citing
 
 Gandy v. State,
 
 373 So.2d 1042, 1045 (Miss.1979)). In this case, the jury weighed the evidence and testimony presented by both sides, and it ultimately convicted Johnson of armed robbery because of his participation. Based on our standard of review, we find, viewing the evidence in the light most favorable to the State, that the jury could have found Johnson guilty of armed robbery beyond a reasonable doubt.
 

 ¶ 12. Therefore, this issue is without merit.
 

 B. Armed Carjacking
 

 ¶ 13. Johnson next argues that there was insufficient evidence presented to find him guilty of armed carjacking. Mississippi’s armed-carjacking statute is found in Mississippi Code Annotated section 97-3-117(2) (Supp. 2011) and provides that: “Whoever commits the offense of carjacking while armed with or having readily available any pistol or other firearm ... shall be guilty of armed carjacking.”
 

 ¶ 14. It is clear that based on Franklin’s testimony, the jury believed Johnson and Taylor had acted in concert to carry out the events that occurred that night. The State proved Taylor took possession of Franklin’s car through the use of a gun. As an aider and abettor, Johnson was guilty of the crime of armed carjacking even though he did not drive Franklin’s car or request to be taken anywhere.
 

 ¶ 15. Keeping in mind our standard of review, we find this issue is without merit as it was reasonable, based on the evidence presented, for a jury to convict Johnson of armed carjacking.
 

 C. Kidnapping
 

 ¶ 16. Johnson was also convicted of kidnapping in violation of Mississippi Code Annotated section 97-3-53 (Supp. 2011) which states:
 

 Any person who, without lawful authority and with or without intent to secretly confine, shall forcibly seize and confine any other person, or shall inveigle or kidnap any other person with intent to cause such person to be confined or
 
 *306
 
 imprisoned against his or her will, ... shall be imprisoned for life in the custody of the Department of Corrections if the punishment is so fixed by the jury in its verdict. If the jury fails to agree on fixing the penalty at imprisonment for life, the court shall fix the penalty at not less than one (1) year nor more than thirty (30) years in the custody of the Department of Corrections.
 

 ¶ 17. Johnson’s argument is he did not participate in any of the crimes that occurred that night and had no knowledge of Taylor’s intent to rob Franklin or that Taylor was in possession of a gun. He further asserts he never even held the gun that night. As was discussed above, Franklin testified to a different version of events; specifically, Franklin testified that at one point during the night, Johnson did have possession of the gun. The State asked Franklin several questions regarding Johnson’s possession of the gun. The following exchange between the State and Franklin occurred at trial:
 

 State: And when [Taylor] left the car and went into these apartments where you couldn’t see him, is Terry [Johnson] still in the car with you with that gun?
 

 Franklin: Yes, sir — yes ma’am.
 

 State: Were you free to leave at that point?
 

 Franklin: Oh, no, ma’am.
 

 Based on the evidence presented, primarily through the testimony of Franklin, the jury determined Johnson was guilty of kidnapping Franklin. Viewing the evidence in a light most favorable to the State, we agree and find the State proved all the necessary elements of kidnapping, and a reasonable jury could have found Johnson guilty of kidnapping Franklin. There was evidence presented that while Johnson held the gun Franklin was not free to leave the car.
 

 ¶ 18. Therefore, this issue is without merit.
 

 D. Burglary of a Dwelling
 

 ¶ 19. Next, Johnson argues that there was insufficient evidence to convict him of burglary of a dwelling found in Mississippi Code Annotated section 97-17-28 (Supp.2011). The elements necessary to prove burglary of a dwelling are “(1) the unlawful breaking and entering [of a dwelling]; and (2) the intent to commit some crime when entry is attained.”
 
 Kirkwood v. State, 52
 
 So.3d 1184, 1187 (¶ 12) (Miss.2011) (quoting
 
 Parker v. State,
 
 962 So.2d 25, 27 (¶ 9) (Miss.2007)). Johnson submits he had no knowledge of any items taken from Franklin’s home and that he never returned to Franklin’s home after Franklin agreed to give them a ride home; therefore, the State failed to prove the first element. In regard to the second element, Johnson argues no evidence was presented that he actually went back to Franklin’s house. Again, Johnson only relies on his version of the events. Franklin testified that Johnson and an unidentified male were the persons who entered his home, carried out the items, and placed the items in the car’s trunk. Johnson entered Franklin’s home with the intent to commit larceny by taking Franklin’s property.
 

 ¶ 20. The jury weighed the conflicting testimony and determined that Johnson was guilty of burglary of a dwelling. Based on our standard of review, we find that the evidence was sufficient to prove each element of the crime of house burglary and that any rational juror could have found Johnson guilty of house burglary beyond a reasonable doubt.
 

 ¶ 21. Therefore, this issue is without merit.
 

 
 *307
 
 E. Firearm Enhancement
 

 ¶ 22. Lastly, Johnson was convicted of violating Mississippi Code Annotated section 97-87-87(1), which provides:
 

 [A]ny person who uses or displays a firearm during the commission of any felony shall, in addition to the punishment provided for such felony, be sentenced to an additional term of imprisonment in the custody of the Department of Corrections of five (5) years, which sentence shall not be reduced or suspended.
 

 Johnson argues the evidence presented indicated that Taylor was in possession of the gun and not Johnson. As we have previously stated, Franklin testified that Johnson was in possession of the gun for a period of time while Taylor was not in the car; therefore, Johnson used the gun while committing the felony of kidnapping. His actions fall squarely within the statute making him eligible for the additional sentence.
 

 ¶23. We find that based on the evidence presented, viewed in a light most favorable to the State, a rational juror could have found the State proved all the elements of this crime.
 

 ¶ 24. Therefore, this issue is without merit.
 

 II. Jury Instructions
 

 ¶ 25. Johnson’s next argument on appeal is the circuit court erred in not granting his request for a jury instruction on the affirmative defense of duress. It is undisputed that it is a defendant’s right to have a jury instruction on his theory of the case presented even if the evidence is “weak, inconsistent, or of doubtful credibility.”
 
 Banyard v. State,
 
 47 So.3d 676, 681 (¶ 12) (Miss.2010) (quoting
 
 Ellis v. State,
 
 778 So.2d 114, 118 (¶15) (Miss.2000)). Further, a defendant is entitled to his instruction “even where the evidence ... arises only in the defendant’s own testimony.”
 
 Id.
 
 (quoting
 
 West v. State,
 
 725 So.2d 872, 888 (¶ 66) (Miss.1998) (overruled on other grounds)).
 

 ¶ 26. Johnson submits that duress was a theory of his defense; therefore, he was entitled to the duress instruction he requested. The circuit judge rejected Johnson’s request for this jury instruction on the basis that “there is no foundation in the evidence to support Johnson’s theory that he participated in these crimes out of duress. He just said he didn’t do it.” At trial, Johnson maintained he did not participate in the crimes, but there was sufficient evidence for a jury to determine that if he did participate, he was under duress. Johnson states that when Taylor dropped him off at his apartment later that night, Taylor threatened to kill him if he told anyone about what had happened. Johnson also testified that he was shocked by what Taylor did and was frightened of him because he did not know what Taylor was capable of doing. Johnson argues that this evidence was sufficient to prove he was under duress during the commission of the crimes and entitled to a jury instruction on duress.
 

 ¶ 27. The supreme court has adopted a four-part test to prove duress; the parts are as follows:
 

 1) the defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury; (2) that he had not recklessly or negligently placed himself in the situation; (3) that he had no reasonable legal alternative to violating the law; (4) that a direct causal relationship may be reasonably anticipated between the criminal action and the avoidance of harm.
 

 Banyard,
 
 47 So.3d at 682 (¶ 13) (quoting
 
 Ruffin v. State,
 
 992 So.2d 1165, 1177-78 (¶ 39) (Miss.2008)). In
 
 Ruffin,
 
 992 So.2d at 1177 (¶¶ 37-38), the supreme court
 
 *308
 
 agreed with the circuit court’s finding that Micah Ruffin was not entitled to a duress instruction as to his kidnapping charge because there was no foundation in the evidence to support this theory of his defense. They found that Ruffin failed to satisfy part one of the test because he never presented evidence that he was threatened or had “a well-founded fear of death or serious bodily injury.”
 
 Id.
 
 at 1178 (¶ 40). The supreme court also found that Ruffin had reasonable alternatives to violating the law because “Ruffin could have attempted to renounce any further participation in the crime, and joined the other occupants at the back of the home. Alternatively, he could have tried to flee in the vehicle.”
 
 Id.
 
 at 1178 (¶ 41). Additionally, there was evidence presented that Ruffin possessed the gun after he was threatened which further negates his claim of duress.
 
 Id.
 
 at 1178 (¶ 43). It was based on this evidence the supreme court held “no rational juror could have concluded that Ruffin’s participation in the kidnapping was under a threat of imminent danger, especially considering that he actually possessed the gun on at least two occasions and had reasonable alternatives to participating in the crime.”
 
 Id.
 
 at 1178 (¶ 48).
 

 ¶28. Applying this four-part test to the facts of this case, we find that the circuit judge did not err in refusing to grant a duress instruction because there was no foundation in the evidence to establish duress. First, Johnson failed to satisfy part one of the test in that he did not establish that he was threatened in any way while he was committing the crimes. Like in
 
 Ruffin,
 
 Johnson did not provide evidence that while the crimes were occurring he was under threat of imminent danger, death, or serious bodily injury. He testified that only
 
 after
 
 the crimes were committed did Taylor threaten his life if he told anyone. Also similar to
 
 Ruffin,
 
 Johnson possessed the gun during at least one point of the crimes. Franklin testified that Johnson held the gun while Taylor was out of the car for approximately ten to fifteen minutes. It was at that time that Johnson and Franklin could have escaped. Additionally, Johnson could have told Taylor that he did not want to participate. We find the circuit judge did not err in refusing to grant Johnson’s request for a jury instruction on the theory of duress.
 

 ¶ 29. This issue is without merit.
 

 ¶ 30. THE JUDGMENT OF THE WASHINGTON COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, ARMED ROBBERY, AND SENTENCE OF TEN YEARS; COUNT II, ARMED CARJACKING, AND SENTENCE OF TEN YEARS; COUNT III, KIDNAPPING, AND SENTENCE OF TEN YEARS; COUNT IV, BURGLARY OF A DWELLING, AND SENTENCE OF FIFTEEN YEARS WITH TEN YEARS TO SERVE, FIVE YEARS SUSPENDED, AND FIVE YEARS OF POST-RELEASE SUPERVISION; AND COUNT V, FIREARM ENHANCEMENT, AND SENTENCE OF FIVE YEARS; WITH THE SENTENCES IN COUNTS I, II, III, AND IV TO RUN CONCURRENTLY AND THE SENTENCE IN COUNT V TO RUN CONSECUTIVELY TO THE CONCURRENT SENTENCES IN COUNTS I, II, III, AND IV; ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.
 

 LEE, C.J., IRVING AND GRIFFIS P.JJ., BARNES, ISHEE, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ„ CONCUR.