IRVING, J.,
 

 for the Court:
 

 ¶ 1. Nathaniel Lavell Coleman was convicted of felony murder by a Jackson County jury and was sentenced by the Jackson County Circuit Court to life imprisonment in the custody of the Mississippi Department of Corrections. Aggrieved, he appeals and asserts that he was denied effective assistance of counsel and that the verdict is against the overwhelming weight of the evidence.
 

 ¶ 2. Finding no reversible error, we affirm.
 

 FACTS
 

 ¶ 3. At approximately 3:45 p.m. on October 13, 2006, Yvette Dott was shot in the back and killed outside of Deadrick Franklin’s residence at 3520 Kimberly Drive in Moss Point, Mississippi. The record clearly reflects that Franklin, rather than Dott, was the intended target. In June 2008, Coleman was indicted for deliberate-design murder. He was subsequently re-indicted and tried for felony murder pursuant to Mississippi Code Annotated section 97-3-19(l)(c) (Rev.2006).
 
 [1]
 
 Nicholas Barnes and
 
 *388
 
 Latterice Barnes were also indicted for felony murder.
 

 ¶4. At trial, Franklin testified that he came home on October 13 to find that his home had been burglarized. According to Franklin, a trail of his clothing and other belongings led from his house to 3506 Kimberly Drive, where Nicholas and Nicholas’s brother Latterice lived. Franklin stated that, armed with a gun, he confronted Nicholas in an effort to get his things back. Franklin testified that Nicholas started “mouthing off’ and that Nicholas’s mother and sister appeared and began calling “other people up.” Franklin stated that, at that point, he left and returned to his home. Franklin recalled that shortly after Dott arrived at his house, she went to visit her friend who lived across the street from Nicholas. Franklin testified that Dott returned about ten minutes later, but before she made it into his house, he heard several gunshots. When he opened the door, he discovered that Dott had been shot. Franklin stated that immediately thereafter, he saw Coleman “speed past” Franklin’s house.
 

 ¶ 5. Law enforcement officials arrived shortly after the shooting and found a projectile, a bullet fragment, and numerous shell casings on Kimberly Drive. They also recovered a 12-gauge shotgun and a 9-millimeter handgun near Kimberly Drive. The handgun is believed to have been used in the shooting.
 

 ¶ 6. Several residents of Kimberly Drive, including Thelma Reece and her mother, Vida Anderson, testified about what they had witnessed the day of the murder. However, none of them were able to identify the shooter or shooters or any of the persons who were involved. Reece recalled that there were two shooters — one in Franklin’s front yard and one with a shotgun in Franklin’s backyard. Reece stated that she did not see their faces and could not identify them but that one of them wore a white T-shirt.
 
 [2]
 
 Reece testified that the man who shot Dott was standing in Franklin’s front yard.
 

 ¶ 7. Following the shooting, Coleman provided a statement to Lieutenant David Lawson of the Moss Point Police Department. In the statement, Coleman implicated Latterice as the person who had shot and killed Dott.
 
 [3]
 
 According to Coleman, he was summoned to Kimberly Drive by a person named Andrew.
 
 [4]
 
 Coleman stated that when he arrived, Nicholas and Latter-ice were plotting retaliation against Franklin for pulling a gun on Nicholas. Coleman further stated that they all got into
 
 *389
 
 his vehicle and headed to Kimberly Drive and that during the ride, Nicholas told him that he planned to shoot Franklin. When they arrived at Franklin’s house, Coleman stated that Latterice jumped out of the car and fired five shots at a person that Lat-terice thought was Franklin. Coleman also stated that Nicholas fired four shots. Further, Coleman admitted that he had a gun with him that day, but he stated that he did not fire any shots. Coleman stated that he tried to get Latterice to stop shooting when he realized that the person that they were firing at was Dott, and not Franklin.
 

 ¶ 8. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
 

 ANALYSIS AND DISCUSSION OF THE ISSUES
 

 1. Denial of Continuance
 

 ¶ 9. In his first issue, Coleman argues that he was denied effective assistance of counsel because the trial judge refused to grant him a continuance of more than one day. On the first day of trial, Coleman’s attorney informed the court that he was not prepared to proceed on the felony-murder charge. He explained that he had received a notice of election from the State on September 18, 2008, that advised that the State would proceed to trial on cause number 30-07-10,377(3) for deliberate-design murder.
 
 [5]
 
 Then, the prosecutor explained that he spoke with Coleman’s attorney and informed him that he was taking Coleman’s case back before a grand jury in an effort to get an indictment against Coleman for felony murder. The prosecutor stated that Coleman was then indicted in cause number 30-08-10,655(3) for felony murder, with aggravated assault being the underlying felony. The prosecutor also pointed out that a second notice of election was filed on October 17, 2008, and that that notice was for cause number 30-08-10,-655(3). The trial judge noted that Coleman’s attorney signed a waiver of arraignment in cause number 30-08-10,655(3) on September 19, 2008, and that the waiver was filed on September 22, 2008. The trial judge also noted that the waiver contained a trial date of October 27, 2008, which he noted was the same date that was reflected on Coleman’s original indictment. Coleman’s attorney claimed that he did not receive a copy of the notice of election for cause number 30-08-10,655(3). The prosecutor disputed Coleman’s attorney’s claim and argued that Coleman’s attorney was on notice that the State intended to try Coleman on the felony-murder charge pri- or to trial. Nevertheless, Coleman’s attorney made an ore tenus motion for a continuance, arguing that he was not prepared to proceed on the felony-murder charge and wanted additional time to research Mississippi’s felony-murder statute. After hearing testimony on the issue, the trial judge granted Coleman’s attorney a one-day continuance, even though he concluded that “it’s no surprise that this matter was set for trial October 27. The evidence is the same, and I don’t see any prejudice that would result proceeding to trial in 2008-10,655.”
 

 ¶ 10. “The decision to grant or deny a motion for a continuance is within the sound discretion of the trial court and will not be reversed unless the decision
 
 *390
 
 results in manifest injustice.”
 
 Ruffin v. State,
 
 992 So.2d 1165, 1174-75 (¶ 29) (Miss0.2008) (quoting
 
 Boone v. State,
 
 973 So.2d 237, 241 (¶ 13) (Miss.2008)).
 

 ¶ 11. As stated, Coleman argues that he was denied the right to effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution. Specifically, Coleman argues that the trial judge’s refusal to continue the case beyond one day resulted in his attorney not having adequate time to prepare for trial. He cites
 
 Cruthirds v. State,
 
 190 Miss. 892, 2 So.2d 145, 146 (1941) wherein the Mississippi Supreme Court reversed a defendant’s conviction for unlawful possession of whiskey after finding that the trial judge erred in refusing to grant his motion for a continuance. In
 
 Cruthirds,
 
 the defendant, Henry Lyman Cruthirds, was allowed to confer with his attorney for a mere three minutes after he was arrested. Cruthirds’s attorney asked for a continuance because he was already involved in an action in another county and had not had an opportunity to investigate or prepare for trial.
 
 Id.
 
 The trial judge did not respond to his request, and the trial was set for the following day.
 
 Id.
 
 Cruthirds’s attorney made an ore tenus motion “asking for time to confer with his client and prepare his defense.”
 
 Id.
 
 However, the motion was overruled, and the defendant’s trial began “some five minutes after his counsel arrived.”
 
 Id.
 
 No witnesses testified on the defendant’s behalf, as Cru-thirds’s principal witness was out of state.
 
 Id.
 
 at 145-46. However, the witness stated in an affidavit that she would appear and testify if given the opportunity to do so.
 
 Id.
 

 ¶ 12. We find
 
 Cruthirds
 
 clearly distinguishable from our case. Here, Coleman’s attorney was on notice of the trial date at least five weeks prior to trial. While Coleman’s attorney alleges that he needed additional time to research Mississippi’s felony-murder statute, he has offered no explanation as to why he could not have done so during the five weeks that he was on notice that his client would be tried for felony murder. Therefore, we cannot conclude that the trial judge abused his discretion by granting Coleman a one-day continuance. In fact, we see no reason why the one-day extension was warranted under these facts. Accordingly, we find no merit to this issue.
 

 2. Weight of the Evidence
 

 ¶ 13. Coleman also argues that the trial judge erred in denying his motion for a new trial because the verdict is against the overwhelming weight of the evidence.
 
 [6]
 
 A trial judge’s decision to deny a motion for a new trial will only be disturbed in cases where the trial judge has abused his discretion in doing so.
 
 Wilkins v. State,
 
 1 So.3d 850, 854 (¶ 11) (Miss.2008). Further, in
 
 Massey v. State,
 
 992 So.2d 1161, 1164 (¶ 17) (Miss.2008) (quoting
 
 Jones v. State,
 
 904 So.2d 149, 154 (¶ 14) (Miss.2008)), our supreme court held:
 

 When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. The
 
 Jones
 
 court also stated that “the evidence should be weighed in the light most favorable to the verdict.”
 

 ¶ 14. Coleman contends that whether he acted in concert with Latterice in plan
 
 *391
 
 ning the attempted assault on Franklin was contested at trial. As noted, Coleman admitted that he drove Nicholas and Lat-terice to Franklin’s residence and that, while they were en route, Nicholas informed him that Nicholas planned to shoot Franklin. Coleman further admitted that, prior to leaving, he armed himself with a .25-caliber handgun with the intent of scaring Franklin. Therefore, based on the admissions in Coleman’s statement to the police, it is clear that he actively participated in the attempted aggravated assault against Franklin. Moreover, as previously noted, Franklin testified that he witnessed Coleman speed past his house immediately after the shooting. Thus, Franklin also placed Coleman at the scene of the shooting. In light of these facts, we cannot conclude that allowing Coleman’s conviction for felony murder to stand sanctions an unconscionable injustice. This issue lacks merit.
 

 ¶ 15. THE JUDGMENT OF THE JACKSON COUNTY CIRCUIT COURT OF CONVICTION OF FELONY MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JACKSON COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . Section 97-3-19(l)(c) provides that:
 

 (1) The killing of a human being without
 
 *388
 
 the authority of law by any means or in any manner shall be murder in the following cases:
 

 z3
 

 (c) When done without any design to effect death by any person engaged in the commission of any felony other than rape, kidnapping, burglary, arson, robbery, sexual batteiy, unnatural intercourse with any child under the age of twelve (12), or nonconsensual unnatural intercourse with mankind, or felonious abuse and/or batteiy of a child in violation of subsection (2) of Section 97-5-39, or in any attempt to commit such felonies[.]
 

 The killing of a human being during the commission of any of the crimes listed in subsection (c) constitutes capital murder when done without the authority of law by any means or in any manner. Miss.Code Ann. § 97-3-19(2)(e)(f) (Rev.2006).
 

 [2]
 

 . As did Reece, Anderson testified that she witnessed the shooting but that she could not identify the shooter. Anderson also recalled that the shooter wore a white T-shirt.
 

 [3]
 

 . Although Coleman did not testify at trial, his statement was admitted into evidence without objection.
 

 [4]
 

 . According to Coleman, Andrew is Latter-ice's and Nicholas’s brother.
 

 [5]
 

 . Although the record is not entirely clear, it appears that Latterice, Nicholas, and Coleman had either been indicted in separate cause numbers for deliberate-design murder or in a single indictment but had been granted severances. In any event, the notice of election advised that Coleman would be tried second unless Latterice’s case was continued. If that occurred, Coleman would be tried first.
 

 [6]
 

 . The State contends, and we agree, that this issue is procedurally barred because Coleman failed to raise this issue in the trial court. Nevertheless, we will briefly address the issue on the merits.