BARNES, J„ for the Court:
HI. A Jackson County Circuit Court jury convicted Laterrice Terrell Barnes of deliberate-design murder, and he was sentenced to life imprisonment in the custody of the Mississippi Department of Corrections (MDOC). He appeals his conviction *788 and sentence. Finding no error, we affirm.
SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. On October 13, 2006, Deadrick Franklin, a known drug dealer and owner of a home at 3520 Kimberly Drive, discovered that his house had been burglarized. Drugs, money, clothes, and shoes were stolen. Franklin followed a trail of his items to the house behind his own, which was owned by Lilly Barnes. Her son, Laterrice was not there, but Franklin confronted Nicholas Barnes, Laterrice’s brother, and put a gun in his face, threatening him. Franklin quickly left because he thought Tiffany Barnes, Lilly’s daughter, had called the police. Nicholas, however, testified that she had called Later-rice.
¶ 3. Laterrice, along with Nathaniel Coleman, arrived at his mother’s home shortly after the confrontation. When Nicholas told Laterrice that Franklin had pulled a gun on him, Laterrice said, “I’m going to kill that m* * * * *f* * * *r.” Laterrice, Nicholas, and Coleman went to Franklin’s house for retaliation. Nicholas had obtained a shotgun from a friend, and Laterrice possessed a .38 caliber pistol. In the meantime, Yvette Dott, Franklin’s cousin, had stopped by Franklin’s home for a visit. Nicholas went into Franklin’s backyard and fired the shotgun twice. La-terrice and Coleman ran to the front yard, shooting their weapons as well. In the midst of the gunfire and confusion, Dott was shot twice and instantly killed.
¶ 4. Laterrice was not apprehended until a few weeks later; however, Nicholas was quickly arrested and gave two statements to the police.[1] During his second interview, Nicholas informed the police where the guns used in the shooting were hidden, and the police recovered a 12-gauge shotgun and a Jennings 9-millimeter pistol from bushes in a nearby park. The police eventually located and arrested Laterrice and found a .38-caliber pistol under his bed.
¶ 5. Laterrice, Nicholas, and Coleman were indicted for the deliberate-design murder of Dott.[2] On February 19, 2009, Laterrice (hereafter “Barnes”) was convicted by a jury of murder in violation of Mississippi Code Annotated section 97-3-19(1) (Rev. 2006) and sentenced to life in the custody of the MDOC. Barnes filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial, which the circuit court denied. Barnes now appeals and, finding no error, we affirm the circuit court’s judgment.
I. Whether the circuit court erred in denying Barnes’s motion for JNOV or, in the alternative, his motion for a new trial.
A. Sufficiency of the evidence
¶ 6. In reviewing a motion for a JNOV, we determine whether the evidence was legally sufficient to support the verdict. Jackson v. State, 69 So.3d 33, 39 (¶ 18) (Miss.Ct.App.2011) (citing Bush v. State, 895 So.2d 836, 843 (¶16) (Miss.2005)). In making this determination, “the critical inquiry is whether the evidence shows beyond a reasonable doubt that the *789 accused committed the act charged, and that he did so under such circumstances that every element of the offense existed.” Id.
¶ 7. Deliberate-design murder is defined as “[t]he killing of a human being without the authority of law by any means or in any manner ... [w]hen done with deliberate design to effect the death of the person killed, or of any human being[.]” Miss.Code Ann. § 97-3-19(l)(a) (Rev. 2006). “Deliberate design to kill a person may be formed very quickly, and perhaps only moments before the act of consummating the intent.” Brown v. State, 965 So.2d 1023, 1030 (¶ 28) (Miss.2007) (quoting Gossett v. State, 660 So.2d 1285, 1293 (Miss.1995)). The doctrine of transferred intent states that when a person maliciously intends to kill a person and accidentally kills “a person other than the one intended!,] • • • [t]he malicious intent of the unlawful act directed toward one person is transferred to the other person.” Walden v. State, 29 So.3d 17, 25 (¶26) (Miss.Ct.App.2008) (quoting Dobbins v. State, 766 So.2d 29, 33 (¶ 11) (Miss.Ct.App.2000)).
¶ 8. When Barnes found out that Franklin had pulled a gun on Nicholas, he said: “I’m going to kill that m* * * * *f* * * *r.” In Walden, we considered this identical language — “I’m going to kill that m — f—r”—and found that the statement, “made prior to the fatal act[, was] evidence of malice.” Id. at (¶ 25) (citing Dobbins, 766 So.2d at 33 (¶ 11)). There was sufficient evidence that Barnes, Coleman, and Nicholas went to Franklin’s house shortly after the initial confrontation, intending to shoot Franklin. Barnes argues that he did not form a plan to shoot Franklin; rather, he claims he arrived after the shooting had started, and it was then that he pulled his gun and began shooting. However, Barnes admitted in his statement to police: ‘Yeah I was shooting at [Franklin]. The boy had supposed to have came around through the house.” Furthermore, Nicholas testified that Barnes shot Dott. He told police that he “saw Dott fall to the ground, with La-terrice Barnes pointing a firearm in her direction.” Although Barnes intended to shoot Franklin, his malicious intent was transferred to Dott.
¶ 9. Barnes contends that Nicholas’s testimony is “tainted” since he accepted a plea deal, “thus giving him a great incentive to produce testimony to the liking of the State.” He also argues that, based on the evidence, Nicholas could not have been an eyewitness to the shooting. He bases his claim on the fact that testimony showed Barnes standing across the fence from the victim and on his conclusion that Nicholas’s view would have been blocked by the house. However, this Court has consistently held that “the credibility of witness testimony is the province of the jury.” Wilson v. State, 72 So.3d 1145, 1159 (¶ 41) (Miss.Ct.App.2011) (quoting Price v. State, 892 So.2d 294, 297 (¶ 15) (Miss.Ct.App.2004)).
H.10. Consequently, we find the evidence presented at trial was legally sufficient to support the verdict.
B. Weight of the evidence
¶ 11. “While a motion for a judgment notwithstanding the verdict is considered with regard to the legal sufficiency of the evidence, a motion for a new trial delves into the overwhelming weight of the evidence.” Jackson, 69 So.3d at 37 (¶ 11) (quoting McLendon v. State, 945 So.2d 372, 384 (¶ 34) (Miss.2006)). Whether to grant a new trial is subject to the discretion of the circuit judge, whose decision will not be reversed unless we find “the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscion *790 able injustice.” Id. at (¶ 12) (quoting McLendon, 945 So.2d at 385 (¶ 40)). In considering the evidence, we “must accept as true all the evidence which supports the State’s position, together with all inferences reasonably flowing therefrom, in the light most favorable to the State’s theory of the case.” Jones v. State, 39 So.3d 860, 864-65 (¶ 27) (Miss.2010) (quoting Britt v. State, 520 So.2d 1377, 1379 (Miss.1988)).
¶ 12. Barnes argues that the State’s evidence against him was “tenuous.” He claims that the State’s forensic expert and the pathologist who performed Dott’s autopsy, Dr. Paul McGarry, “found that a bullet from a 9mm pistol caused the fatal wound.” Since Barnes’s gun was a .38-caliber pistol, he contends that the evidence showed that he did not kill Dott. Dr. McGarry did testify that the diameter of the projectile that he recovered from Dott’s body was 9 millimeters; however, he also observed that the diameter of a .38 bullet and a 9 millimeter are “roughly the same,” stating: “They make about the same size wound.” When asked by Barnes’s counsel if he knew “what caliber bullet caused that wound,” Dr. McGarry responded: “No, I don’t.” The State’s forensic expert in ballistic testing, Lori Beall, also testified that the recovered projectile “is classified as a .38 caliber class, which means it can fall in the range of a .38-caliber, .357, or a 9-millimeter.” Therefore, the evidence did not exclude Barnes’s .38-caliber pistol as the weapon that killed Dott.
¶ 13. Moreover, this argument is irrelevant as the jury was instructed on the elements of accessory before the fact, which states that one who aids or abets a principal of a felony may be indicted and punished as a principal. See Miss.Code Ann. § 97-1-3 (Rev. 2006). Although Barnes claims that it was never proven that he or his cohorts shot Dott, there was no evidence that, except for these three men, any other person was shooting at Franklin’s house. Franklin testified that, although he had a pistol, he was inside the house and did not fire at anyone.
¶ 14. It was firmly established that Barnes was present at the shooting with the intent to harm Franklin. Barnes admitted to shooting his .38-caliber pistol twice at Franklin. Also, Nicholas testified that Barnes said to him that “he shot Deadrick Franklin girl and he hoped that the B’s dead.” Accordingly, we find that the verdict is not contrary to the overwhelming weight of the evidence.
II. Whether the circuit court erred in denying Barnes’s motion for continuance.
¶ 15. Defense counsel filed a motion for continuance on February 6, 2009, which the circuit court denied. Barnes claims that the denial of the motion was error and prejudiced his defense, as his counsel was not given adequate time to prepare for the case. Barnes notes that trial counsel was not assigned to his case until September 2008; therefore, counsel had less than six months to prepare for trial. He also asserts a contradictory claim that counsel had only “six days to review, research, and investigate all of the discovery before the trial.” This argument is based on defense counsel’s receipt on February 5, 2009 of a corrected transcript of Barnes’s statement, which was five days before the filing of the motion for continuance.
¶ 16. The decision on whether to grant or deny a motion for a continuance is subject to the sound discretion of the circuit court “and will not be reversed unless the decision results in manifest injustice.” Coleman v. State, 30 So.3d 387, 389-90 (¶ 10) (Miss.Ct.App.2010) (quoting Ruffin v. State, 992 So.2d 1165, 1174-75 (¶29) (Miss.2008)). The record reflects that the *791 case had already been continued prior to the court’s denial of the motion. Defense counsel was assigned to the case in September 2008 and filed a motion for continuance on October 27, 2008, which the circuit court granted. The trial was set for February 17, 2009. At trial, it was further discussed:
MR. LAWRENCE: Your Honor, I disagree that this is a first setting. This is the second setting. The case was set October 27th and agreed to this date that they would be ready.
BY THE COURT: The Court’s aware of that and the record will reflect that. Although it’s a very serious matter, the facts — the Court having tried one case already, the facts are not necessarily so complex that any competent attorney would be impaired in their ability to prepare for trial in almost six or eight months since their office was appointed to represent Mr. Barnes.
And I’m faced with a situation, you know, obviously, do you admit that six months — excuse me, let me back up— six months, apparently, since full discovery was provided by the State to the defense and some eight months since after the office was appointed, at least. It also involves a trial where a transcript exists of the previous trial of a co-defendant, and essentially, the evidence I have heard yesterday, the first day of trial, is essentially the repeat of what was previously had. I fail to understand how the office can claim to not have sufficient time to get ready.
We must agree with the circuit judge’s findings. Defense counsel received a large portion of discovery in October 2008, including corrected transcripts of Nicholas and Coleman’s statements. It also received Nicholas’s plea transcript on January 27, 2009, approximately three weeks before trial.
¶ 17. Barnes further claims that the circuit court’s denial of the motion for continuance constituted prejudicial error because it resulted in the exclusion of three witnesses — his mother, Lilly Barnes; his sister, Tiffany Barnes; and his cousin, Laquita Patrick. At the beginning of his case-in-chief, Barnes attempted to call his mother, Lilly, as a witness. The State objected as it had only just received notification of the witness that morning. Although the State had a brief opportunity to interview Lilly, it argued there was not adequate time to prepare a response to her testimony. The circuit court observed: “In regard to the late disclosure of witnesses on behalf of the defense, I guess it’s admitted that no disclosure was had until at least this morning[J” Thus, the circuit court excluded the witnesses from testifying, stating:
I’m now confronted with a complete and total disregard of the disclosure obligations of defense counsel in a criminal case.... And I’m not sure if I have ever seen a more willful disregard of the reciprocal rules of discovery than what I’ve seen transpire today.
[[Image here]]
And I have to subscribe a tactical reason for that. It seems apparent to me that it was because the Court refused to allow a continuance or grant a continuance of this trial.
Barnes now contends that had the defense been afforded more time by a continuance, it would have been able to timely disclose these witnesses under the discovery rules.
¶ 18. Discovery violations are reviewed for abuse of discretion. We will affirm the circuit court’s decision unless it “committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors.” Davis v. State, 995 *792 So.2d 767, 771 (¶ 9) (Miss.Ct.App.2008) (quoting Young v. State, 791 So.2d 875, 878 (¶ 9) (Miss.Ct.App.2001)). A circuit court may “exclude defense evidence where discovery violations are ‘willful or motivated by the desire to gain a tactical advantage.’ ” McGregory v. State, 979 So.2d 12, 17 (¶ 8) (Miss.Ct.App.2008) (citing Coleman v. State, 749 So.2d 1003, 1007 (¶ 9) (Miss.1999)). “The purpose of the discovery guidelines is to avoid trial by unfair surprise or ambush.” Davis, 995 So.2d at 771 (¶ 10).
¶ 19. We find no abuse of discretion in circuit judge’s findings regarding defense counsel’s tactical advantage. Although defense counsel claimed it had only learned about these witnesses two days before trial, the three witnesses at issue were Barnes’s close family members, who were present at the confrontation between Nicholas and Franklin. We find it unlikely that they were not available or known to the defense prior to trial. Furthermore, Barnes has failed to assert what additional evidence would have been provided by these three witnesses.
¶ 20. We find no manifest injustice resulted from the circuit court’s denial and Barnes’s motion for continuance; this assignment of error is without merit.
III. Whether the circuit court erred in admitting Jury Instructions S-2 and S-7.
¶21. Barnes argues that the circuit court erred by giving Jury Instruction S-7 in conjunction with Jury Instruction S-2, claiming that their admission relieved the State of proving each element of the crime and confused the jury. Jury Instruction S-2 contained the elements of an accessory to a crime, stating that the jury could find Barnes guilty if it was proven beyond a reasonable doubt that he joined with others and shared intent to commit the crime for which he was charged. Jury Instruction S-7, an instruction on the elements of transferred intent, stated:
The Court instructs the jury that under the law of the State of Mississippi if an individual has formed the necessary intent to commit a deliberate design murder, with expressed motive and intent to kill, and during that attempt to kill, kills another unintended individual, the doctrine of transferred intent applies and you should consider that transferred intent when considering the elements instruction for murder in this case. In other words, if you find beyond a reasonable doubt that the Defendant, La-terrice Barnes, intended to kill Deadrick Franklin and during the attempt to complete that crime, unintentionally, acting alone or in conjunction with others, killed Yvette Dott, then the intent to kill Deadrick Franklin in transferred under our law as the intent to kill Yvette Dott, and you should consider that when considering the other instructions in this case.
Defense objected to both jury instructions at trial, and on appeal, Barnes argues the combination of these two instructions relieved the State of its burden to prove every element.
¶ 22. The circuit court has “considerable discretion in determining whether to grant or deny jury instructions.” Mayers v. State, 42 So.3d 33, 41 (¶ 28) (Miss.Ct.App.2010) (citing Bickham v. Grant, 861 So.2d 299, 301 (¶ 8) (Miss.2003)). “In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found.” Humphries v. State, 18 So.3d 305, 307 (¶ 10) (Miss.Ct.App.2009) (quoting *793 Johnson v. State, 828 So.2d 582, 584 (¶ 4) (Miss.Ct.App.2002)).
¶ 23. Barnes claims that the evidence presented at his trial established that he “was not intentionally trying to kill Dead-rick Franklin because he was not on the same street when he fired shots from a .38 caliber pistol.” Barnes said in his statement to police that he fired shots over the fence next door to Franklin’s house. Even if this were true, as we have already noted, this distinction is irrelevant. “ ‘[E]very person who shall be an accessory to any felony, before the fact, shall be deemed and considered a principal, and shall be indicted and punished as such; and this whether the principal have been previously convicted or not.’ Thus, it is largely irrelevant who did the shooting.” Randall v. State, 716 So.2d 584, 590 (¶ 32) (Miss.1998) (quoting Miss.Code Ann. § 97-1-3 (Rev. 1994) (emphasis added)).
¶ 24. “[M]alice, or deliberate design, may be inferred from use of a deadly weapon.” Phillips v. State, 794 So.2d 1034, 1037 (¶ 11) (Miss.2001) (citation omitted). There was testimony that Barnes said he was going to kill Franklin. Barnes admitted that he fired his pistol towards Franklin’s house. Nicholas testified that Barnes said that he shot Dott and “hoped that the B’s dead.” Barnes misinterprets the doctrine of transferred intent, arguing that the State erroneously tried to transfer another shooter’s intent to commit murder to him. As we have already stated, the doctrine transfers the intent to harm from the intended victim to another victim. It does not concern a transfer of the intent of a perpetrator to another perpetrator.
¶ 25. We find that the evidence— Barnes’s statement that he was going to kill Franklin and his subsequent action of firing a gun at Franklin’s home — clearly demonstrated that Barnes, Nicholas, and Coleman shared a malicious intent to harm Franklin. When Dott, an innocent bystander, was killed by their actions, the intent to harm Franklin was transferred to Dott. Who actually shot and killed Dott is “largely irrelevant.” See Randall, 716 So.2d at 590 (¶ 32). We find no error in the grant of the jury instructions.
¶ 26. THE JUDGMENT OF THE JACKSON COUNTY CIRCUIT COURT OF CONVICTION OF DELIBERATE-DESIGN MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JACKSON COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ„ CONCUR.

. In his statements, Nicholas admitted that he, Laterrice, William Jackson, Morris Kirkland, K’Darius Lee, and Andrew Knox had burglarized Franklin's home. Laterrice claims, however, that he was not involved in the burglary.

. Nicholas pleaded guilty and was sentenced to twenty years for manslaughter. Evidence of Coleman’s conviction and sentence were excluded at Laterrice’s trial.